UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    **REPORT, RECOMMENDATION
                                             AND ORDER**
v.
                                             10-CR-00360-RJA-JJM
RICO J. VENDETTI, et al.,

                    Defendants.
_____

By Text Order dated December 7, 2010, this case was referred to me by Hon.

Richard J. Arcara for supervision of all pretrial matters. Before me are the motions of defendants

Rico J. Vendetti [121, 125, 128, 244],[1] Arlene Combs [120, 141], Terry Stewart [118, 243], Donald

Griffin [124, 246], Albert Parsons [119, 247], Dayon Shaver [130], and Brandon Meade [135]

seeking various forms of relief.[2] Oral argument was held on June 27, 2012 [263].[3]

For the following reasons, defendants' non-dispositive motions are granted in part

and denied in part, and I recommend that defendants' motions to dismiss be granted in part and

denied in part, and that defendants' motions to suppress be denied.


**BACKGROUND**

The Second Superseding Indictment [208] alleges that defendants Vendetti, Combs,

Stewart, and others constituted a criminal enterprise whose purposes included "obtaining

merchandise, both through a ring of organized shoplifters . . . and by robbery, and thereafter selling

_____

[1]        Bracketed references are to the CM/ECF docket entries.

[2]        I previously denied [253] the government's motion [248] to strike defendant Vendetti's
second pretrial motion [244]. The motions of defendants Combs, Stewart and Griffin include
requests for suppression, which are being addressed in separate Reports and Recommendations.

[3]        Oral argument on the suppression motions was held on September 27, 2012 [290].

that merchandise at a substantial profit in interstate and foreign commerce using internet sites".

Id., p. 2. It also alleges that on July 5, 2010, defendants Vendetti and Combs solicited defendants Parsons and Griffin and others to steal property from one Homer Marciniak, and that during the commission of the home invasion robbery they assaulted Mr. Marciniak, resulting in his death. Id., pp. 7-11, 14-17. It further alleges that defendants Vendetti and Combs willfully attempted to influence the testimony of certain witnesses. Id., pp. 22-26.

As a result of this conduct, the Second Superseding Indictment charges defendants Vendetti, Combs, and Stewart with racketeering in violation of 18 U.S.C. §§1962(c), 1963 and 2 (Count 1) and with a racketeering conspiracy in violation of 18 U.S.C. §§1962(d) and 1963 (Count 2); defendants Vendetti, Combs, Parsons, and Griffin with violent crime in aid of racketeering, in violation of 18 U.S.C. §§1959(a)(1), 1959(a)(3) and 2 (Counts 3 and 4); defendants Vendetti, Combs, Stewart, Shaver, and Meade with conspiracy to transport stolen merchandise in interstate and foreign commerce, in violation of 18 U.S.C. §371 (Count 5); defendants Vendetti, Combs, and Stewart with transportation of stolen merchandise in interstate and foreign commerce, in violation of 18 U.S.C. §§2314 and 2 (Count 6); and defendants Vendetti and Combs with witness tampering, in violation of 18 U.S.C. §§1512(b)(1) and 1512(b)(3) (Counts 7-10).

## ANALYSIS

A.      **Dispositive Motions**

1.      **Motion to Dismiss Count 1 For Failing to Sufficiently Allege a Criminal Enterprise**

Defendant Stewart moves for dismissal of Count 1 of the Second Superseding Indictment, challenging the sufficiency of the allegations establishing the existence of a criminal

enterprise.  He argues that "the indictment only parrots RICO, alleging without more, that the enterprise was an 'ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise'" and that it "fails to allege the specific facts necessary to show the existence of a criminal enterprise".  Schechter Affirmation [243], ¶¶15-16.[4]

The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity".  18 U.S.C. §1962(c).  An "enterprise" is defined as "any . . . group of individuals associated in fact although not a legal entity".  18 U.S.C. §1961(4).

An indictment must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[ ] the defendant of what he must be prepared to meet", and protect against double jeopardy.  Russell v. United States, 369 U.S. 749, 763-64 (1962).  "The indictment . . . must be a plain, concise and definite written statement of the essential facts constituting the offense charged".  Fed. R. Crim. P. ("Rule") 7(c)(1). Consistent with these requirements, "the existence of an enterprise must be alleged in the indictment with sufficient factual detail to apprise the defendant of the general nature of the alleged enterprise.  Proving an enterprise at trial is another matter; this requires proof of, among other things, an association of individuals for a common purpose and an

---

[4]        To the extent that defendants have moved to join in the motions of their co-defendants (Lembke Declaration [121-1], ¶¶86-89; Griffin's Motion  [246], Rarick Affirmation [141], ¶55; Parsons' Motions [119], Point XVIII, [247]), these motions are granted, and I will consider all motions and arguments to have been made on behalf of the applicable defendants.

organizational structure." <u>United States v. Weaver</u>, 2010 WL 1633319, *2 (S.D.W.Va. 2010)

(*citing* <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981)).

        The Second Superseding Indictment contains sufficient factual detail concerning the alleged enterprise. It identifies the members of the alleged enterprise, describes its purpose as seeking to obtain stolen property for re-sale, and that it operated in "organized rings" to obtain specific merchandise sought by defendant Vendetti that he would purchase and resell. [208], pp. 1-3. Any arguments as to whether these individuals actually functioned as a unit for the common purpose of achieving the goal of the enterprise are more appropriately reserved for trial. For example, Stewart argues that "[t]here is no allegation that Rico Vendetti would share the profits he made with Mr. Stewart, or anyone else for that matter". Schechter Affirmation [243], ¶18. "[T]he defendants confuse the requirements for pleading a RICO violation with the requirements for proving a RICO violation. A RICO enterprise is proven by 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' . . . But the law does not require this proof to be alleged in an indictment." <u>United States v. Triumph Capital Group, Inc.</u>, 260 F.Supp.2d 444, 455 (D. Conn. 2002). Therefore, I recommend that this motion be denied.

       **2.**      **Motion to Dismiss Count 1 for Failing to Sufficiently Allege a Pattern of Racketeering Activity and Count 6 as Vague and Duplicitious**

        A "'pattern of racketeering activity' [necessary for a RICO violation] requires at least two acts of racketeering activity". 18 U.S.C. §1961(5). The Second Superseding Indictment alleges four racketeering acts: the First Racketeering Act alleges that Vendetti, Combs, and Stewart engaged in the interstate transportation of stolen property in violation of 18 U.S.C. §§2314 and 2,

the Second Racketeering Act alleges that Vendetti, Combs, and Stewart violated various New York State Penal Law provisions arising from the robbery and murder of Mr. Marciniak, the Third Racketeering Act alleges that Vendetti engaged in witness tampering, and the Fourth Racketeering Act alleges that Combs engaged in witness tampering.

Defendants seek to dismiss the First, Third and Fourth Racketeering Acts and, if those Acts are dismissed, further argue that the Count 1 fails to allege a pattern of racketeering activity. *See* Schechter Affirmation [243], ¶54; Lembke Declaration [244-1], ¶¶20-23.[5] They also seek dismissal of Count 6 for the same reasons.

### a. Counts 1 (First Racketeering Act) and 6

The First Racketeering Act of Count 1 of the Second Superseding Indictment alleges that "[b]eginning sometime in and around 2004 . . . and continuing until on or about October 15, 2010 . . . defendants [Vendetti, Combs and Stewart] aided and abetted by each other and by others, both known and unknown, unlawfully and knowingly transported, transmitted and transferred goods, wares and merchandise, the aggregate value of which exceeded $5,000, in interstate and foreign commerce knowing the same to have been stolen", in violation of 18 U.S.C. §§2314 and 2. Id., p. 4, ¶1. It further alleges that during this period, Vendetti, Combs, and Stewart would recruit individuals to steal "substantial amounts of merchandise from retail stores, including, but not limited to, WalMart, Sears, Target, JoAnn Fabrics, Home Depot, various chain drug stores and other retail stores, often stealing . . . specific merchandise that appeared on lists defendant VENDETTI provided". Id., p. 5, ¶2.

---

[5]     While defendants collectively challenge the First, Third and Fourth Racketeering Acts, only the First Racketeering Act applies to all defendants.

Count 6 similarly charges Vendetti, Combs, and Stewart with transportation of stolen merchandise in interstate and foreign commerce, in violation of 18 U.S.C. §§2314 and 2, for conduct "[b]eginning sometime in and around 2006 . . . and continuing until on or about October 15, 2010". Id., pp. 20-22. The only difference between the First Racketeering Act of Count 1 and Count 6 appears to be the time frame. Whereas Count 6 alleges a time frame of approximately four years (Second Superseding Indictment [208], p. 20, ¶A), the First Racketeering Act of Count 1 alleges a time frame of approximately six years (id., p. 4, ¶1).

Relying on Rule 7(c) and the Sixth Amendment, Vendetti (Lembke Declaration [244-1], ¶¶26-34, 66-67), Stewart (Schechter Affirmation [243], ¶¶23-33, 58-59; Schechter Affirmation [118], ¶¶5-7), and Combs (Rarick Affirmation [141], ¶¶10-13) seek to dismiss the First Racketeering Act of Count 1 and Count 6 of the Second Superseding Indictment as being unconstitutionally vague and duplicitous. Defendants argue that the "non-inclusive list of stores is insufficient to apprise [them] of the allegations against [them] - especially considering the lack of specificity regarding the dates of the thefts and the property allegedly stolen". Lembke Declaration [244-1], ¶29; Schechter Affirmation [243], ¶¶25, 27; Rarick Affirmation [141], ¶¶11, 13. They argue that such vagueness "invites the government to amend or vary the conduct at will, risking conviction for conduct different from that presented to the grand jury and without unanimity as to the conduct allegedly contemplated" (Schechter Affirmation [243], ¶30; Lembke Declaration [244-1], ¶32), and "encourages repetitive prosecutions for the same conduct". Schechter Affirmation [243], ¶31; Lembke Declaration [244-1], ¶33.

Rule 7(c) "performs three constitutionally required functions:  It fulfills the Sixth

Amendment right 'to be informed of the nature and cause of the accusation;' it prevents a person

from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth

Amendment protection against prosecution for crimes based on evidence not presented to the grand

jury".  United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).  Although couched in terms of

vagueness and duplicity, defendants' motions relate to each of these protections.  *See* United States

v. Lavin, 504 F.Supp. 1356, 1359 -60 (D.C.Ill. 1981) ("It is a matter of hornbook law that the

prohibitions against vague and duplicitous indictments serve to protect the defendants' rights

guaranteed by the Sixth and Fifth Amendments to (1) be adequately informed of the nature and

cause of the charges against them so that they can prepare their defenses; and (2) be protected

against multiple prosecutions for the same offense").

The first paragraph of 18 U.S.C. §2314 provides that:

> "Whoever transports, transmits, or transfers in interstate or foreign
> commerce any goods, wares, merchandise, securities or money, of the
> value of $5,000 or more, knowing the same to have been stolen,
> converted or taken by fraud . . .  [s]hall be fined under this title or
> imprisoned not more than ten years, or both."

The Second Superseding Indictment fails to identify any specific transactions

occurring over the four year or more time period at issue.  Defendants argue that "[s]ince the

Indictment fails to identify the individual acts of transportation or transmission, it must be dismissed

for lack of particularity".  Schechter Affirmation [243], ¶59.  When this argument was initially

raised by Stewart in response to Count 6 of the Superseding Indictment (Stewart Affirmation [118],

¶7), the government responded that defendants "are not charged with stealing property.  Rather,

their conduct entails one continuous, inextricably intertwined, *i.e.*, non-severable, *scheme* to

transport stolen goods in interstate and foreign commerce", and that it is not necessary for it to prove that the property was stolen, only that defendants had knowledge that it was stolen. Government's Consolidated Response [138], pp. 11-12 (emphasis added).

Now, however, the government argues that "[n]owhere in . . . the charging portion of Count Six, is a scheme alleged. Rather, because we are unaware of any single $5000 sales of stolen merchandise by defendant Vendetti, we have . . . 'aggregated' his sales. But 'aggregation' is not a 'scheme' and the fact that we have pled the manner and means in which Vendetti and his boosters accomplished their nefarious acts does not transform what we have charged into the charging of a scheme". Government's Response [250], p. 8.

"[T]he first paragraph of §2314 . . . criminalizes only individual acts of transportation or transmission, not schemes or actions taken pursuant to schemes." United States v. Capoccia, 503 F.3d 103, 112 (2d Cir. 2007); United States v. Johnpoll, 739 F.2d 702, 714 (2d Cir. 1984) ("Under 18 U.S.C. §2314 each interstate or foreign transportation of stolen securities constitutes a separate violation of §2314, even if the various acts of transportation are part of a single scheme"). Where, as here, no single transaction meets the jurisdictional threshold, under certain circumstances transactions may be aggregated to meet the threshold. See Schaffer v. United States, 362 U.S. 511, 517 (1960) ("where the shipments have enough relationship so that they may properly be charged as a single offense, their value may be aggregated. The Act defines 'value' in terms of that aggregate. The legislative history makes clear that the value may be computed on a 'series of transactions'").

During oral argument, AUSA Bruce stated that he knows which transactions the government will seek to aggregate at trial, and that in preparing for the trial defendants will have

"$5,000,0000 in transactions to pick from, perhaps more".[6]  When asked which transactions the

Grand Jury found probable cause to aggregate, he responded, "[w]ithout trying to sound flip, we

don't care what the grand jury found, we care what the proof is at trial".

While the government may not care what the grand jury found, defendants do.  "The

right to have the grand jury make the charge *on its own judgment* is a substantial right which cannot

be taken away with or without court amendment."  Stirone v. United States, 361 U.S. 212, 219

(1960) (emphasis added).  "The very purpose of the requirement that a man be indicted by grand

jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting

independently of either prosecuting attorney or judge."  United States v. Gonzalez, 686 F.3d 122,

127 (2d Cir. 2012).  "[I]t would be inappropriate for a court to speculate as to whether a grand jury

*might* have returned an indictment in conformity with the available evidence, because such an

exercise would work the harm the Grand Jury Clause is intended to prevent—a federal prosecution

begun by arms of the Government without the consent of fellow citizens".  Id. at 128 (emphasis in

original).

As drafted, the Second Superseding Indictment provides the government with wide

latitude in selecting the transactions it may seek to establish at trial - with no assurance that those

transactions were considered by or even presented to the grand jury.  However, a defendant "must

be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him"

and a defendant should not be forced "to go to trial with the chief issue undefined".  Russell, 369

U.S. at 766.  It is only where a defendant is "given *notice* of the *core of criminality* to be proven at

---

[6]        These quotes are from the digital audio recording of the June 27, 2012 oral argument.

-9-

trial" that "significant flexibility in proof" is permitted.  <u>United States  v. Rigas</u>, 490 F.3d 208, 228 (2d Cir. 2007), <u>cert</u>. <u>denied</u>, 522 U.S. 1242 (2008) (emphasis in original).

"The 'core of criminality' of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." <u>United States v. D'Amelio</u>, 683 F.3d 412, 418 (2d Cir. 2012).  This determination  varies "in relation to the crime at issue".  <u>Id</u>.  For example, in <u>Russell</u>, the Court considered the sufficiency of indictments charging violations of 2 U.S.C. §192, which criminalizes the refusal "to answer any question pertinent to the question under inquiry" by a Congressional committee.  369 U.S. at 752.   Following the defendants' conviction for violating 2 U.S.C. §192, they appealed, arguing that the indictments against them were unconstitutionally vague because they failed to state what the question under inquiry was when the alleged refusal to answer occurred.  The Court reversed the convictions, holding that the indictments "failed to satisfy the first essential criterion by which the sufficiency of an indictment is to be tested, *i.e.*, that they failed to sufficiently apprise the defendant 'of what he must be prepared to meet'".  <u>Id</u>. at 764.  The Court explained that "the very core of criminality 2 U.S.C. §192 . . . is pertinency to the subject under inquiry of the questions which the defendant refused to answer".  <u>Id</u>.

For the same reason, this court dismissed an indictment for lack of specificity in <u>United States v. Solovey</u>, 2005 WL 1279228 (W.D.N.Y.), <u>Report and Recommendation adopted</u>, 04–CR–244, [41] (W.D.N.Y. 2005) (Schroeder, M.J./Skretny, J.).  That indictment charged defendant with violating 18 U.S.C. §§1512(a)(2)(A) and (C) by threatening to use physical force "against persons known to the Grand Jury", but failed to name the persons who were threatened. <u>Id</u>. at *1.  Reasoning that "[t]he identities of the victims are at the very core of criminality", the court

held that the indictment must identify the victims.  Id. at *2.  "Such requirement prevents the prosecution from feeling free to fill in this vital missing element . . . to name someone different from the one intended by the grand jury.  A prosecutorial power to roam at large in this fashion is not allowable." Id. at *3.

By contrast, conspiracy charges and alleged schemes generally require less specificity in order to place a defendant on notice of the core of criminality.  See United States v. Salmonese, 352 F.3d 608, 621 (2d Cir. 2003) (the "core criminality" alleged in the indictment was "a fraud scheme, operating between October 1995 and June 1996, whose ultimate purpose was the conspirators' realization of . . . illegal profits from their sales of inflated stripped warrants"); United States v. Bidloff, 82 F.Supp.2d 86, 91 (W.D.N.Y.2000) (Foschio, M.J./Arcara, J.) ("where the indictment alleges a conspiracy to commit mail fraud, the indictment is sufficient if the allegation of the scheme to defraud provides sufficient details as to the fraudulent nature of the scheme without alleging specifics of the fraudulent misrepresentation").  For example, in Capoccia, the Second Circuit concluded that the indictment, which identified only post-May 2000 transactions in the 2314 Count, was limited to the identified transactions, but noted  that "if [the] Count . . . charged an offense under a statute - such as, for example, the conspiracy statute, 18 U.S.C. §371, . . .  our conclusion could be different".  Capoccia, 503 F.3d at 115.  However, the Second Superseding Indictment does not charge defendants with a conspiracy - indeed,  above, the government has expressly disavowed any allegation of a scheme.  See Government's Response [250], p. 8.

"[T]he first paragraph of §2314 . . . criminalizes only individual acts of transportation or transmission, not schemes or actions taken pursuant to schemes".  Capoccia, 503 F.3d at 112 (emphasis in original).  Since schemes or actions taken pursuant to schemes are not chargeable

under the section at issue, notice as to the individual acts of transportation of stolen items become necessary to advise a defendant of the "core of criminality".  Whereas in <u>Capoccia</u> the indictment expressly identified  the transactions at issue (503 F.3d at 111), in this case the First Racketeering Act of Count 1 and Count 6 of the Second Superseding Indictment do *not* identify any specific transaction allegedly occurring over the four or more years at issue - leaving defendants, in the government's own words, with "$5,000,000 in transactions to pick from, perhaps more" in preparing for trial.  The allegations also fail to specify locations ("in the Western District of New York , and elsewhere" (<u>id</u>., p. 20, ¶A)), retailers (merchandise was shoplifted "from retail stores, including, but not limited to, WalMart, Sears, Target, JoAnn Fabrics" (<u>id</u>., p. 21, ¶B)), items ("goods, wares and merchandise" (<u>id</u>., p. 21, ¶A)), or shoplifters (Vendetti  provided lists of items to steal to "COMBS and STEWART, and others known and unknown" (<u>id</u>., p. 21, ¶B)).

At oral argument, AUSA Bruce stated that the transactions at issue will be limited to those identified in the e-Bay logs provided to defendants.  However, the Second Superseding Indictment does not similarly limit the scope of the transactions - instead, it alleges that Vendetti and others "took steps to offer said merchandise for sale through, *among other means and methods*, the [identified] eBay accounts" (<u>id</u>., p. 22, ¶D (emphasis added)).[7] *Compare with* <u>United States v. Brose</u>, 2011 WL 6140545, *4  (W.D.N.Y. 2011) (Skretny, J.), <u>adopting in part and setting aside in part</u>, 2011 WL 6140655 (W.D.N.Y.) (McCarthy, M.J.) ("The material specified in the indictment is Defendant's hard drive.  The Government neither seeks nor would be permitted to trespass beyond that virtual container in what it presents at trial, but will be properly constrained by the contents of the hard drive").

---

[7]     Count 6 appears to be missing content between paragraphs C and D.

"The indictment must be considered as it was actually drawn, not as it might have been drawn." United States v. Pirro, 212 F. 3d 86, 92 (2d Cir. 2000). *See* United States v. Vitillo, 490 F.3d 314, 321 (3rd Cir. 2007) ("the sufficiency of the indictment should be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it"). Even if I were to treat the government's representations at oral argument as a bill of particulars limiting the scope of transactions at issue to the e-Bay logs provided to defendants, "a bill of particulars cannot save an invalid indictment". Russell, 369 U.S. at 770.

Faced with a similarly expansive indictment, this Court in Solovey concluded that the allegations of the indictment leave "the class of possible victims [with] a substantial membership", thereby making the indictment "excessively and prejudicially uncertain." 2005 WL 1279228 at *3. The Second Superseding Indictment is no different, leaving the government with the power "to roam at large" in selecting the transactions to submit to the trial jury, including those that may have never been presented to the grand jury. Id. Therefore, I conclude that the First Racketeering Act of Count 1 and Count 6 are unconstitutionally vague.

For the same reason, they are duplicitous. "An indictment is duplicitous if it joins two or more distinct crimes in a single count." United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992). While "criminal charges may aggregate multiple individual actions that otherwise could be charged as discrete offenses as long as all of the actions are part of a single scheme", United States v. Moloney, 287 F.3d 236, 240 (2d Cir.), cert. denied, 537 U.S. 951 (2002), as previously discussed, 18 U.S.C. §2314 does not allow transactions to be pled as a scheme - instead, each aggregation of acts of interstate transportation involving stolen goods meeting the requisite jurisdictional amount is chargeable as a separate offense. *See* Schaffer, 362 U.S. at 517. Given the

government's statement that there are $5 million or more in transactions potentially at issue, and without any indication from the face of the Second Superseding Indictment as to which transactions are involved, the Second Superseding Indictment does not protect defendants from double jeopardy and is plainly duplicitous. For these reasons, I recommend that the First Racketeering Act of Count 1 and Count 6 be dismissed to the extent they charge defendants with violating 18 U.S.C. §2314.[8]

### b.    The Third and Fourth Racketeering Acts of Count 1

The Third and Fourth Racketeering Acts of Count 1 incorporate by reference the witness tampering allegations of Counts 7 through 10. These counts allege that Vendetti tampered with witnesses James Larkins and with defendant Stewart on or about July 5, 2010[9] (Counts 7 and 8) and that defendant Combs tampered with "'J.J', an individual known to the Grand Jury", on or about February 28 and March 2, 2011 (Counts 9 and 10). Defendants argue that the Third and Fourth Racketeering Acts lack horizontal or vertical relatedness since they are unrelated to the other racketeering acts that pertain to dealing in stolen property, and are unrelated to the alleged purpose of the enterprise, which was to obtain and sell stolen merchandise. Lembke Declaration [244-1], ¶¶52-60; Schechter Affirmation [243], ¶¶34-54.

---

[8]    Although not specifically addressed by the parties, the First Racketeering Act of Count 1 and Count 6 also charge defendants with aiding and abetting, in violation of 18 U.S.C. §2. "To aid and abet the commission of a crime, there must be an actual crime committed". United States  v. Hyatt, 565 F.2d 229, 233 (2d Cir. 1977). Therefore, I also recommend that the aiding and abetting charges be dismissed.

[9]    At oral argument Vendetti suggested that he could not be charged with witness tampering for conduct directed at Stewart, but has not since moved for dismissal on this ground.

"[T]he 'pattern' element of racketeering is a 'fairly flexible concept.'. . . While predicate acts must be related, both to each other (horizontal relatedness) and to the enterprise (vertical relatedness), and must threaten continuous criminal activity to constitute a pattern . . . these requirements can be satisfied in a number of ways". United States v. Basciano, 599 F.3d 184, 202 (2d Cir. 2010) (*quoting* H.J. Inc. v. Northwestern Bell Telephone Co, 492 U.S. 229, 239 (1989)).

The government argues that the relatedness element will ultimately be an issue for the jury to determine. Government's Consolidated Response [138], p. 15. The Second Superseding Indictment expressly alleges that among the enterprise's means and methods, they "engaged in witness tampering to attempt to insulate themselves from prosecution" (Second Superseding Indictment [208], p. 3, ¶4). At this stage, that allegation is sufficient to establish both vertical and horizontal relatedness. *See* United States v. Walker, 2005 WL 3466010, *5 (D.Conn. 2005) ("The witness-tampering is demonstrably related to the other predicate racketeering act of drug conspiracy and thus is sufficient to establish a pattern of racketeering . . . . Walker's thinly-veiled threat to Osorio was obviously an attempt to protect the drug-trafficking conspiracy from the intervention of the police and the courts, and thus the two criminal acts served 'similar purposes'").

Defendants also initially argued that their alleged witness tampering could not constitute a racketeering activity since it occurred after the enterprise ceased operating in October 2010, as alleged in the Superseding Indictment [55], p. 4. Lembke Affirmation [121-1], ¶¶40-56. However, the Second Superseding Indictment alleges that the criminal enterprise existed "until in or about March of 2011" ([208], p. 4), which, as Vendetti concedes "encompasses the time period of

the acts which make up the third and fourth racketeering acts and Counts 7, 8, 9, and 10 of the indictment". Lembke Declaration [244-1], ¶88.

However, Vendetti argues that this amendment was "the result of improper conduct by the prosecutor before the grand jury" since "there is simply no evidence that could have been submitted to the grand jury to substantiate a claim that this alleged enterprise continued into March 2011." Id., ¶89.[10] He requests that I review the grand jury minutes "to determine whether the prosecutor engaged in improper conduct in order to secure an indictment" (id., ¶90), and seeks dismissal on this basis. Id., ¶91.

Rule 6(e)(3)(E)(ii) permits disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury". "Disclosure of grand jury minutes is extraordinary relief that will be granted only upon a compelling showing of particularized need." United States v. Castiglia, 1987 WL 30591, *1 (W.D.N.Y. 1987) (Elfvin, J.). *See also* United States v. Vaughan, 2010 WL 3025648, *3 (S.D.N.Y. 2010) ("To warrant the 'extraordinary relief' of disclosure of grand jury proceedings, a criminal defendant must make a specific factual showing").

Mere "[s]peculation and surmise as to what occurred before the grand jury is not a substitute for fact." Vaughan, 2010 WL 3025648 at *3. Vendetti's "speculative and conclusory allegations of misconduct" fail to establish his entitlement to the "'extraordinary relief' of disclosure of the minutes of the grand jury proceedings". United States v. Dacunto, 2001 WL 13343, *10 (S.D.N.Y. 2001). Therefore, Vendetti's motion for disclosure of the grand jury transcripts is denied.

---

[10] Stewart joins in this aspect of Vendetti's motion. Schechter Affirmation [243], p.12 n. 2.

-16-

### c.  Does the Dismissal of the First Racketeering Act Mandate Dismissal of Count 1?

Since I have recommended that only the First Racketeering Act be dismissed, if my recommendation is adopted, at least two racketeering acts will remain alleged against Vendetti (Second and Third Racketeering Acts) and Combs (Second and Fourth Racketeering Acts). However, only one racketeering act (Second Racketeering Act) will remain alleged against Stewart.

At oral argument, the government conceded that "the racketeering acts have to be considered defendant by defendant".  *See* <u>Bonanno Organized Crime Family of La Cosa Nostra</u>, 683 F.Supp. at 1429 ("Congress specifically declined to make mere membership in an organized crime organization a RICO offense . . . . '[t]he focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise'") (*quoting* <u>United States v. Persico</u>, 832 F.2d 705, 714 (2d Cir. 1987)).

Therefore, if my recommendation that the First Racketeering Act be dismissed is adopted, I also recommend that Count 1 be dismissed against Stewart to the extent it charges him with violating 18 U.S.C. §1962(c).[11]

Although not addressed by the parties, Count 1 also charges defendants with aiding and abetting, in violation of 18 U.S.C. §2.  "Aiding and abetting is not a substantive charge, and as with RICO conspiracy charges, the government [does] not have to prove two predicate acts of racketeering by [defendant]." <u>United States v. Wyatt</u>, 807 F.2d 1480, 1482 (9th Cir.), <u>cert</u>. <u>denied</u>,

---

[11]     Count 1 also charges defendants with violating 18 U.S.C. §1963, but this is a penalty provision.

484 U.S. 858 (1987). Therefore, I recommend that this charge not be dismissed against defendant Stewart.

3.     **Motion to Dismiss Counts 2, 3, and 4**

Vendetti and Stewart move to dismiss these counts as being dependent on Count 1. Lembke Declaration [244-1], ¶¶62-65; Schechter Affirmation [243], ¶¶55-57.

a.     **Count 2**

Incorporating the allegations supporting Count 1, Count 2 of the Second Superseding Indictment alleges a racketeering conspiracy, in violation of 18 U.S.C. §§1962(d) and 1963. [208], pp. 13-14. Since I have not recommended dismissing Count 1 as against Vendetti and Combs, I recommend that their motions to dismiss Count 2, as being dependent upon Count 1, be denied.

While I have recommended dismissal of Count 1 (charging racketeering in violation of 18 U.S.C. §1962(c)) against Stewart, this dismissal would not mandate dismissal of Count 2 against him. "It makes no difference that the substantive offense under §1962(c) requires two or more predicate acts." Salinas v. United States, 522 U.S. 52, 65 (1997). 18 U.S.C. §1962(d) does not "excuse from [its] reach . . . an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense". Id. Therefore, I recommend that Stewart's motion for dismissal of Count 2 be denied.

**b.    Counts 3 and 4**[12]

Since I have not recommended dismissing Count 1 as against Vendetti and Combs, I recommend that their motions to dismiss Counts 3 and 4, as being dependent on Count 1, be denied.

**4.    Motion to Suppress Physical Evidence**[13]

**a.    1160 North Goodman Street, Rochester, New York**

On October 27, 2010 I signed a search warrant (10-MJ-01113) for 1160 North Goodman Street, Rochester, New York, including the first floor area and upstairs apartments.[14]   It was supported by the Affidavit of Federal Bureau of Investigation Special Agent Michael F. McElhenny of the same date.  Id.  Shaver moves to suppress the evidence seized from the upper apartment of 1160 North Goodman Street, arguing that the search warrant lacked probable cause. Okay Affirmation [130], Point I.

Without raising any independent argument, Vendetti joins in this motion (Lembke Declaration [244-1], ¶¶105-106) and submits an affidavit [262] in support of his standing to challenge the search of this location.  Because I had signed this search warrant, at oral argument I

----

[12]      Stewart is not charged in these counts.

[13]      With respect to a search of a barn at 7835 Straight Road, Springwater, New York on or about November 3, 2011, Stewart states that "[b]ased on AUSA Bruce's representation on the record during the Court proceeding held on February 21, 2012 that all discovery has been provided, counsel has not moved against the search since the government has not disclosed any intention to use evidence seized in connection with that search against Mr. Stewart", but reserves his right to make such a motion if this evidence later surfaces.  Schechter Affirmation [243], ¶67.  Stewart also moved to suppress physical evidence seized by New York State Troopers from his bedroom at his mother's Springwater, New York home.  Schechter Affirmation [118], Point IV. The parties agreed at oral argument that this issue was to addressed  as part of the suppression hearing.

[14]      Shaver's motion [130] attaches only an unsigned/undated copy of SA McElhenny's supporting affidavit (id., Ex. A).

gave defendants the opportunity to have another Magistrate Judge address these motions. Although

Shaver availed herself of this opportunity, Vendetti indicated that he had no objection to me issuing

a Report and Recommendation on this issue.

Thereafter, Magistrate Judge Hugh Scott issued a Report and Recommendation [286]

concluding that Shaver had standing only to challenge evidence seized from the upper apartment

and denying her motion to suppress the evidence. Although I conclude that Vendetti has established

his standing to challenge the entire search of 1160 North Goodman Street, I recommend, for the

reasons stated in Judge Scott's Report and Recommendation [286], that his motion to suppress this

evidence be denied.


**b.      1175 North Goodman Street, Rochester, New York**

On October 27, 2010, I also signed a search warrant for the basement of 1175 North

Goodman Street, Rochester New York (10-MJ–01114). This search warrant was also based upon

the October 27, 2010 Affidavit of SA McElhenny. Although Shaver did not move to suppress this

search warrant, Vendetti asserts that he is joining in her motion to suppress the evidence seized as a

result of the search of 1175 North Goodman Street (Lembke Declaration [244-1], ¶106), and does

not offer any independent argument in support of this motion. Therefore, I recommend that

Vendetti's motion to suppress be denied.


**c.      Vendetti's Motion for Leave to File a Supplemental Motion**

While Vendetti did not make any independent arguments directed at his challenge to

the search warrants issued for 1160 and 1175 North Goodman Street, he moves to reserve his right

to file additional motions relating to the suppression of the evidence seized pursuant to these search warrants pending his review of the transcripts from the suppression hearings. (Lembke Declaration [244-1], ¶¶107-117). However, many of the hearing transcripts were filed at the time he filed this motion. Therefore, I deny this motion, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted. Rule 12(e).

**B.  Non-Dispositive Motions**

**1.  Motions Mooted by the Government's Representations**

In response to defendants' pretrial motions for various forms of relief (Parsons' Motion [119], Point I; Okay Affirmation [130], ¶¶45-47; Greenman Affirmation [124], Point IV; Parsons' Motion [119], Point XI; Okay Affirmation [130], Point IX; Greenman Affirmation [124], Point XIII; Parsons' Motion [119], pp. 11-12, Parsons' Motion [119], Point IX, Okay Affirmation [130], ¶¶60-61, Okay Affirmation [130], ¶¶62-63, Kubiniec Affirmation [135], ¶¶29-30), the government responds that no informants were used in this case, that no recordings (consensual or court-authorized) will be used in this case, that no pre- or post-indictment identifications were conducted, that there are no government summaries, that there are no mental health records or evaluations of any government witnesses, that no evidence was obtained through the use of a mail cover, and that it is not in possession of any evidence or information that would tend to impeach the credibility of any declarant whose declaration it will proffer at trial. Government's Consolidated Response [138], pp. 17-19. Based upon the government's representations, these motions are denied as moot.

## 2. Motion for <u>Brady/Giglio</u> Material[15]

Defendants move for immediate production of all <u>Brady</u>/<u>Giglio</u> material. *See* Schechter Affirmation [118], ¶¶26-30; Parsons' Motion [119], Point III; Greenman Affirmation [124], Point VI; Okay Affirmation [130], ¶59; Kubiniec Affirmation [135], ¶¶15-24; Rarick Affirmation [141], ¶¶32-37, 44-46; Lembke Declaration [244-1], ¶¶127-129. The government responds that it "is aware of, and intends to fully comply with, its obligations under *Brady* . . . and that case's progeny", and that "[t]he only '*Brady* material' [it] currently possesses are the criminal histories . . . of several of [its] witnesses". Government's Consolidated Response [138], pp. 25-26. Since Vendetti and Combs are charged with witness tampering, the government is reluctant to provide this material at this time. <u>Id</u>. at pp. 25-26. Nevertheless, it agrees that it will turn over this material when the <u>Jencks</u> Act material (18 U.S.C. §3500) is produced. <u>Id</u>. at p. 26.

"[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." <u>United States v. Coppa</u>, 267 F.3d 132, 146 (2d Cir. 2001). Where "a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner". <u>Id</u>. at 144. I conclude that disclosure of the witnesses' criminal histories, as well as any additional <u>Brady</u> material the government may come in possession of, in accordance with the deadline to be set by Judge Arcara for disclosure of the <u>Jencks</u> Act material (or

---

[15]     <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Giglio v. United States</u>, 405 U.S. 105 (1979).

other independent deadline he may set) will be sufficient.  Therefore, defendants' motions for immediate disclosure are denied.


   3.     **Motion for Early Disclosure of <u>Jencks</u> Act Material**

Defendants seek early disclosure of <u>Jencks</u> Act material.  *See* Okay Affirmation [130], ¶67; Lembke Declaration [244-1], ¶131; Greenman Affirmation [124], ¶71 (seeking <u>Jencks</u> Act material "at least 60 days in advance of trial").  The government is not required to disclose and turn over <u>Jencks</u> Act material until after the witness has completed his or her direct testimony.  *See* 18 U.S.C. §3500; Rule 26.2.  The "Jencks Act [also]  prohibits a District Court from ordering the pretrial disclosure of witness statements".  <u>United States v. Coppa</u>, 267 F.3d at 145; <u>United States v. Exolon-Esk Co.</u>, 1995 WL 46719, *3 (W.D.N.Y. 1995) (Skretny, J.) ("it is . . .  uniformly recognized that a district court generally lacks authority to order pretrial production of Jencks materials over an objection by the government").  Therefore defendants' motions are denied.

Nevertheless, the government agrees that "[t]he transcripts of the grand jury testimony of any individuals who testify at trial will be turned over shortly before trial, consistent with the pretrial order we expect Judge Arcara to enter" and that "[a]ny FD 302s or memoranda prepared by or adopted by any FBI Agents, State Police investigators, Medina Police Officers, Orleans County Sheriff's Investigators or any other law enforcement agents who will be testifying will also be provided in advance of trial consistent with the anticipated pretrial order and in accordance with the mandates of 18 U.S.C. §3500."  Government's Consolidated Response [138], p. 22.

**4.      Motion for Rule 16 Discovery and Notice of Intention Pursuant to Rule 12(b)(4)(B)**

Defendants move pursuant to Rule 16 for various discovery and for notice pursuant to Rule 12 of the evidence that the government intends to utilize at trial.  Parsons' Motion [119], Point III; Greenman Affirmation [124], Point V; Okay Affirmation [130], ¶50; Kubiniec Affirmation [135], ¶¶15-24; Rarick Affirmation [141], ¶¶25-31; Lembke Declaration [244-1], ¶¶122-126; Schechter Affirmation [243], ¶¶66-67.  The government responds that it "has provided complete discovery to counsel . . . [and] that it has fully complied with the mandates of subsections (A), (B), (D), (E) (F) and (in part) (G) of [Rule] 16(a)(1)". Government's Consolidated Response [138], pp. 20-21.  It also recognizes this "to be a continuing" obligation and "will provide  further discovery materials if and when they become available".  Id. at  p. 21.  The government also responds with notice of the evidence it intends to use at trial.  Id. at p. 16.

Notwithstanding defendants' arguments that certain Rule 16 discovery has not been produced (Schechter Affirmation [243], ¶¶66-67; Lembke Declaration [244-1], ¶¶124-126), I am entitled to "rel[y] upon the presumption that attorneys, as officers of the court, make truthful representations to the court." United States v. Melton, 2006 WL 1722379, *2  (S.D.Ill. 2006).  *See* United States v. Johns, 336 F.Supp.2d 411, 424 (M.D.Pa. 2004) ("The court is entitled to rely on the representations of counsel, as officers of the court"); Theodore v. State of New Hampshire, 614 F.2d 817, 822 (1st Cir. 1980) ("Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations to him").  Since the government has represented that it is in full compliance with its Rule 16 discovery obligations, defendants' motions are denied.  If the government comes into possession of any additional Rule 16 discovery, it shall promptly be disclosed to defendants.

However, the government acknowledges that it has only complied "in part" with its expert witness disclosures. Therefore, this aspect of defendants' motions are granted. Any remaining disclosures pursuant to Rule 16(a)(1)(G) shall occur no later than 30 days before trial, or as otherwise directed by Judge Arcara. *See* United States v. Lino, 2001 WL 8356, *21 (S.D.N.Y. 2001) ("this Court directs that the Government provide expert witness disclosure to defendants thirty days before trial").

### 5. Motion for a Bill of Particulars

Defendants move for a bill of particulars seeking particularization of Counts 1, 3, 4, 5 and 6 of the Second Superseding Indictment. *See* Parsons' Motion [119], Point XVI (Counts 3 and 4); Lembke Declaration [121-1], ¶¶64-67; Lembke Declaration [244-1], 118-121 (Counts 1, 5 and 6); Greenman Affirmation [124], ¶¶24-32 (Counts 3 and 4); Kubiniec Affirmation [135], ¶¶7-12 (Count 5); Okay Affirmation [130] (Count 5), ¶42; Rarick Affirmation [141], ¶¶14-18 (Count 6); Schechter Affirmation [118], ¶¶8-12; Schechter Affirmation [243], ¶¶60-65 (Counts 1 and 6). The government responds that "the indictment is a speaking indictment" and is "pled in sufficient detail to render a bill of particulars wholly unnecessary". Government's Consolidated Response [138], p. 33. While "the government readily concedes that much of the information sought by the defendants would be 'nice to know', and some of the information would be helpful in preparing for trial", it argues that "the standard is not 'nice to know' or 'helpful in preparing for trial'", and that defendants have "utterly failed to articulate anything more that [*sic*] a boilerplate-based need or justification for the requested information". Government's Consolidated Response. Id., pp. 27-34.

Notwithstanding the government's opposition to defendants' motions for bills of particulars, its response to defendants's pretrial motions [138] includes an extensive introduction captioned "Theory of the Case and Outline of the Proof" (id., pp. 3-10) amplifying the allegations of the Second Superseding Indictment.   While not in the form of a  bill of particulars, I deem it to constitute a bill of particulars.  *See* United States v. Makki, 2007 WL 781821, *6 (E.D.Mich. 2007), rehearing denied, 2007 WL 1455899 (E.D.Mich. 2007) ("Although this list [attached to the government's response to the defendant's motion] is not in the form of a Bill of Particulars, the Court can deem such exhibits to be a Bill of Particulars").  Therefore, I will determine whether defendants are entitled to a bill of particulars based upon the allegations of the Second Superseding Indictment, as amplified by the government's "Theory of the Case and Outline of the Proof" ([138], pp. 3-10).  The circumstances warranting a bill of particulars are limited.

A defendant may obtain a bill of particulars only if the requested information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense."  United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985).  "In deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'"  United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002).  A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense".  United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994).  The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form."  United States v.

Barnes, 158 F.3d 662, 665 (2d Cir.1998).  "Whether to grant a bill of particulars rests within the sound discretion of the district court."  United States v. Panza, 750 F. 2d 1141, 1148 (2d Cir. 1984).

With these principles in mind, I will address defendants' requests.

### a.    Count 1

The principles for adjudicating a motion for a bill of particulars "must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO". United States v. Davidoff, 845 F. 2d 1151, 1154 (2d Cir. 1988).  The particularization defendants seek concerning Count 1 largely focuses on the allegations of the First Racketeering Act, including the merchandise alleged to have been stolen, the dates on which the merchandise was stolen and shipped, and the stores from which the items were stolen.  *See* Lembke Declaration [244-1], pp. 26-27; Schechter Affirmation [243], ¶64.  Since I have recommended dismissing the First Racketeering Act of Count 1, I deny those aspects of defendants' pretrial motions seeking particularization of this aspect of the count as moot.

Aside from the First Racketeering Act of Count 1, the remainder of that Count generally contains a sufficient amount of detail to adequately apprise defendants of the charges against them.  *See* United States v. Muyet, 945 F.Supp. 586, 599 (S.D.N.Y. 1996) (denying a bill of particulars "[w]ith respect to the RICO enterprise and the RICO conspiracy charges, [where] the indictment provides the defendants with: (1) the names and aliases of the defendant members of the RICO enterprise and conspiracy; (2) the name of the enterprise; (3) a brief description of the purposes, means and methods of the RICO enterprise; (4) the area in which the enterprise operated; and (5) the approximate duration of the enterprise.  Furthermore, as explained below, the indictment

provides ample detail regarding the alleged predicate acts of the RICO enterprise. The Court finds

that the indictment, by itself, fully satisfies the specificity requirements of Rule 7").


b.     **Counts 3 and 4**

Counts 3 and 4 of the Second Superseding Indictment charge defendants with violent

crimes in aid of racketeering, in violation of 18 U.S.C. §§1959(a)(1), (a)(3) and 2. Consistent with

18 U.S.C. §1959(a), which requires that a violent crime in aid of racketeering activity be committed

"for the purpose of gaining entrance to or maintaining or increasing position in an enterprise", these

Counts allege that these crimes were committed "in consideration for a promise and agreement to

pay something of pecuniary value, namely money and other proceeds from the home invasion

robbery of Homer Marciniak, from the . . . enterprise". Id., p. 15, ¶E and p. 16, ¶E.

Although Griffin and Parsons are not charged in Count 1, they request a variety of

particulars concerning the existence of the enterprise alleged in Count 1, including whether they

were members of the enterprise, whether their acts were intended to help the enterprise function,

whether the home invasion robbery affected interstate and/or foreign commerce, whether they were

involved in the activities of the alleged enterprise prior to or after the alleged July 5, 2010 home

invasion, and how they unlawfully and knowingly conducted and participated directly and indirectly

in the conduct of the affairs of the enterprise. Greenman Affirmation [124], ¶31.[16]   However,

---

[16]     While Parsons argues that he "is charged with being a member of an 'Enterprise'"
(Parsons' motion [119], Point XVI, p. 27), this is not borne out by allegations of the Second Superseding
Indictment. See United States v. Ferguson, 246 F.3d 129, 134 -135 (2d Cir. 2001) ("Section 1959 reaches
defendants associated with racketeering enterprises who may not be members but who participate in the
organization's activities with the aspiration of becoming members").

Counts 3 and 4 incorporate by reference the allegations of Count 1, including those concerning the existence of an enterprise. These allegations are sufficient to put defendants on notice of the alleged enterprise at issue, its racketeering activities, and their connection to it.

While defendants seek other facts, including how the defendants "caused the death of Homer Marciniak" (Greenman Affirmation [124], p. 12, ¶z), the government's "Theory of the Case and Outline of the Proof" [138] provides sufficient additional detail concerning the home invasion (id., pp. 5-8). Under these circumstances, I conclude that defendants have not established their entitlement to further particularization of Counts 3 and 4. *See* United States v. Gambino, 809 F.Supp. 1061, 1071 (S.D.N.Y. 1992) (involving a charge of murder in aid of racketeering in violation of 18 U.S.C. §1959): "The indictment provides the approximate date and location of the murder, the name of the victim, and the alleged participants. As to Counts Six and Seven, no other information concerning the murder, the defendants' participation, or its alleged connection to the enterprise is required under Rule 7. The Government voluntarily has supplied the defendants with additional information regarding the Oliveri murder including the specific time and location of the alleged murder, as well as information concerning the person who allegedly fired the shots. To the extent that defendants' request any more details with respect to the Oliveri murder or any other details concerning Counts Six and Seven, the Court finds such a request to be utterly without merit".

Griffin and Parsons also seek a variety evidentiary detail, *e.g.*, "whether any alleged merchandise obtained by defendant for the alleged enterprise was sold to any customers who contacted co-defendant Vendetti by any listed [*sic*] counts" (Greenman Affirmation [124], p. 11, ¶p); and "the number of home invasion robberies the defendant is alleged to have participated in"

(Parsons' Motion [119], p. 28, ¶8).  Although this information might be helpful to defendants' trial preparation, it is not necessary to defend against Counts 3 and 4.

Griffin further seeks particularization of the RICO conspiracy count (Count 2).  *See* Greenman Affirmation [124], ¶29.  For example, he seeks the identities of the unindicted co-conspirators and  how the co-conspirators knowingly and  willfully and unlawfully combined and conspired.  Id., p. 10.  However, it is unclear how this information is relevant to Counts 3 and 4.  He has also requests particularization as to whether he was involved in any witness tampering.  Id., p. 11, ¶q.  This request is likewise irrelevant to the Counts currently alleged against him. Therefore, these requests are denied.


c.      Count 5

Generally, "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge".  Barnes, 158 F.3d at 666.  While the alleged conspiracy to transport stolen merchandise in interstate and foreign commerce occurred over approximately four years, it provides more than the "bare bones" of the alleged conspiracy.

While further particularization might be helpful to defendants, "[a]s a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly.  It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal act".  United States v. Feola, 651 F.Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 834 (1989).  Thus, "the government need

not specify when a particular defendant joined the conspiracy, nor is it required to specify what role each defendant played in the conspiracy . . . . Similarly, to the extent that defendants seek a description of the particular acts for which he or she is being held responsible, or a listing of the acts of which each defendant had knowledge, the case law is clear that the government is not required to provide the information".  United States v. James, 2007 WL 914242, *26 (E.D.N.Y. 2007); United States v. Chen, 2007 WL 2244213, *10 (S.D.N.Y. 2007) ("The Second Circuit . . . ha[s] routinely denied requests for Bills of Particulars concerning the 'wheres, whens, and with whoms' of the crime charged").  "Additionally, as the government can prove the existence of a conspiracy through circumstantial evidence, a Bill of Particulars comprised of very specific details is not required for a . . . conspiracy charge."  United States v. Mullen, 243 F.R.D. 54, 62 (W.D.N.Y. 2006) (Foschio, M.J.).

Defendant Shaver, who is only charged in Count 5, requests particularization as to whether she acted as a principal or as an accomplice.  Okay Affirmation [130], ¶42.  However, "the Government need not specify which defendants are charged as principals and which are charged as aiders and abettors, since this would reveal the Government's theory underlying those counts of the indictment." United States v. Mannino, 480 F. Supp. 1182, 1185 (S.D.N.Y. 1979).

Therefore, I conclude that defendants have not established their entitlement to a bill of particulars concerning Count 5.

### d.     Count 6

Defendants seek particularization of Count 6.  *See* Schechter Affirmation [118], ¶12; Schechter Affirmation [243],  ¶65; Lembke Affirmation [244-1], pp. 27, 28; Rarick Affirmation

[141], ¶18.[17]  Since I have recommended dismissal of Count 6, the motion for particularization of this Count is denied as moot.

###   6.        Motion for Fed. R. Evid. 404(b) Evidence

Defendants move for disclosure of Fed. R. Evid. 404(b) evidence.  *See* Schechter Affirmation [118], Point VIII; Parsons' Motion [119], Point IV; Greenman Affirmation [124], Point VII; Kubiniec Affirmation [135], ¶¶13-14; Rarick Affirmation [141], ¶¶47-49; Lembke Declaration [244-1], ¶130.

The government responds that it has "evidence that defendant Vendetti unsuccessfully solicited at least three other individuals to burglarize Marciniak's home and steal his comic books", but that it "does not have any other so-called 404(b) evidence that it might seek to offer against Vendetti or any . . . of the other defendants".  Government's Consolidated Response [138], p. 18.  Based upon the government's representations, these motions are denied as moot. However, if the government learns of any additional evidence encompassed by Fed. R. Evid. 404(b), it shall promptly be disclosed to defendants.

###   7.        Motion for Fed. R. Evid. 608 and 609 Evidence

Defendants move for disclosure of Fed. R. Evid. 608 and 609 evidence.  *See* Schechter Affirmation [118], Point VIII; Parsons' Motion [119], Point IV; Greenman Affirmation [124], Point VII; Rarick Affirmation [141], ¶¶47-49; Lembke Declaration [244-1], ¶130.

---

[17]        Defendants Combs and Stewart seek a bill of particulars as an alternative argument to their  motion to dismiss Count 6 of the Second Superseding Indictment. Rarick Affirmation  [141], ¶14; Schechter Affirmation [118], ¶8.

"With respect to the defendant's requests under Rules 608 and 609, the only notice requirement imposed by either applies where a party intends to introduce evidence of a conviction that is more than ten years old.  Under such circumstances, Rule 609(b) mandates that 'the proponent [give] to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.'  To the extent the government intends to use a conviction more than 10 years old, it must comply with this requirement.  The government has no obligation to provide the defendants with notice of any material that will be used to impeach him pursuant to Rule 608 should he elect to testify."  United States v. Barnett, 2009 WL 1044559, *2 (W.D.N.Y. 2009) (Scott, M.J.).

As the government notes, it cannot provide this disclosure until it knows which witnesses defendants intend to call.  Government's Consolidated Response [138], p. 19.  To the extent defendants may testify on their own behalf at trial, the government represents that each defendant has been provided with a copy of their criminal record and, to the extent their criminal records contain a conviction admissible under Fed. R. Evid. 609(a)(1) and (2), it will seek to use it to impeach the testifying defendant.  Id.  Therefore, these motions are denied, without prejudice to renewal before Judge Arcara.


8.      **Motion to Exclude Testimonial Hearsay**

Defendant Parsons moves to exclude the government from "offering at trial testimonial hearsay where the declarant does not testify at trial, under the Sixth Amendment".  Parsons' Motion [119], Point XIV.  The "exclusion of testimonial hearsay . . . [is] more appropriately resolved by the District Court Judge presiding over the trial in this case".  Barnett,

-33-

2009 WL 1044559, at *3.  Therefore, this motion is denied as premature, without prejudice to renewal before Judge Arcara.

**9.      Motion for Active Participation in *Voir Dire* and to *Voir Dire* Government Experts Outside the Presence of the Jury**

Defendant Parsons moves for leave to actively participate in *voir dire* and defendants Parsons and Griffin move to *voir dire* government experts outside the presence of the jury.  Parsons' Motion [119], Points VIII and X; Greenman Affirmation [124], Point XII.  These motions are more appropriately addressed by Judge Arcara.  Therefore, they are denied, without prejudice to renewal.

**10.      Motion for Production of Statements of Witnesses Who Will Not be Called at Trial**

Defendant Shaver moves to compel the government to "produce any interview memoranda and reports made from interviews with witnesses whom the Government has determined not to call at the trial of the case-in-main, a case-in-rebuttal, or otherwise".  Okay Affirmation [130], ¶55.  While Shaver states that the statements she is seeking are not covered by the Jencks Act or Rule 16 (id., ¶56), "the Jencks Act provides the sole means for discovery of the statements that government witnesses have given to law enforcement agencies".  United States v. Yarborough, 2007 WL 962926, *16 (W.D.N.Y. 2007) (Foschio, M.J.).  Moreover, "[t]he Jencks Act does not mandate disclosure of statements made by any person who does not testify".  United States v. Aquart, 2006 WL 2684304, *4 (D.Conn. 2006).

To the extent that such statements may constitute Brady material, the government has acknowledged its discovery obligations under Brady.  Therefore, this motion is denied.

## 11.    Motion for Production of Government Witness List

Defendants Shaver and Griffin move for disclosure of the government's witness list in advance of trial. Okay Affirmation [130], ¶49; Greenman Affirmation [124], ¶¶46-50. The government responds that it "simply has no duty to disclose the identities of its witnesses before trial under either the Constitution or under Rule 16". Government's Consolidated Response [138], p. 23. While the government acknowledges that it can be required to disclose the names of its witnesses, it argues that defendants have not established a sufficient need for this information. Id.

"As a general rule, the Government is not under any obligation to disclose the identities of witnesses well in advance of trial . . . .  However, the Court has the discretion to compel the pre-trial disclosure of Government's witnesses where the defense makes a sufficient showing for the need for such information." United States v. Shteyman, 2011 WL 2006291, *8 (E.D.N.Y. 2011). "Balanced against the defendants' need for the list is the danger of witness tampering or intimidation." United States v. Cutolo, 861 F.Supp. 1142, 1148 -1149 (E.D.N.Y. 1994).

Defendants' merely generalized claims of need (e.g., Greenman Affirmation [124], ¶49 ("an accused has the right to know the identity and location of prospective government witnesses that he may interview them prior to trial in order to put such witnesses in proper setting for purposes of credibility and cross-examination")), coupled with the allegations of witness tampering (Counts 7 through 10) and violence (Counts 3 and 4), lead me to conclude that such disclosure should not be ordered at this time.  Therefore, defendants' motions are denied, without prejudice to renewal before Judge Arcara.

12.    **Motion for Identification and Assurance of Production of Materials Which Might be Considered to be <u>Jencks</u> Act Material**

Defendant Shaver moves for "an order requiring the identification and assurance of production by the Government of those witness interviews, agent notes and communications which may not fall directly within the purview of the 18 USC Section 3500 statutory definition of a '*statement*', but which may otherwise be considered '*Jencks Act Material*' under the statute". Okay Affirmation [130], ¶68.

I have no reason to believe that the government will not act reasonably and in good faith with respect to its <u>Jencks</u> Act obligations. If it is uncertain whether a document constitutes <u>Jencks</u> Act material, it may apply to the court for a determination. However, at this time I see no basis to order the government to identify items which do not clearly constitute <u>Jencks</u> Act material. Therefore, this motion is denied.

13.    **Motions for Severance or to Exclude or Redact Statements of Non-Testifying Co-Conspirators pursuant to <u>Bruton</u>[18]**

Defendants move to sever or alternatively to exclude/redact non-testifying co-conspirator statements. Okay Affirmation [130], Points XXVI, XXVII; Greenman Affirmation [124], Points II, XVI; Rarick Affirmation [141], ¶50; Kubinec Affirmation [135], ¶¶31-37; Parsons' Motion [119], Point XIII. The government responds that it "recognizes that using statements of a defendant that implicate a co-defendant at a joint trial may well run afoul of the so-called *Bruton* rule . . . and that separate trials may be the rule, rather than the exception, in this case. Nevertheless, . . . this is an issue better managed by Judge Arcara and we submit that the Court should defer any

---

[18]    <u>Bruton v. United States</u>, 391 U.S. 123 (1968).

rulings on the issues created by these statements to Judge Arcara". Government's Consolidated

Response [138], p. 35. I agree with the government.

Severance motions "are more appropriately heard and determined by the trial court,

which is in the best position to rule on the issues presented." United States v. Mireles, 2009 WL

4067643, *4 (W.D.N.Y. 2009) (Scott, M.J.).[19] Similarly, the "[r]esponsibility for determining

whether declarations of an alleged conspirator should be admitted against another rests on the

shoulders of the trial judge". United States v. Mastropieri, 685 F.2d 776, 787–88 (2d Cir.), cert.

denied, 459 U.S. 945 (1982). See United States v. Anguiera, 2012 WL 1232096, *1 (W.D.N.Y.

2012) (Scott, M.J.) ("the relief sought for excluding non-testifying co-conspirators statements . . .

[is] better considered by the District Judge prior to trial and are deferred for that consideration").

Therefore, defendants' motions are denied, without prejudice to renewal before Judge Arcara.


**14.      Motion for Pretrial Disclosure of Co-Conspirator Statements**

Defendant Shaver moves pursuant to Rule 16 and Fed. R. Evid. 801(d)(2)(E)

for disclosure of statements of any alleged co-conspirators  which the government intends to

offer at trial. Okay Affirmation [130], ¶72(A). "Rule 16 does not encompass co-conspirator

statements . . . . The Jencks Act provides the exclusive procedure for discovering statements that

government witnesses—including coconspirators—have given to law enforcement agencies." United

States v. De Leon-Navarro, 2012 WL 2254630, *2 (W.D.N.Y. 2012)(Schroeder, M.J.). Similarly,

---

[19]      In connection with "amplifying [her] severance application", Shaver asks to be provided
with "the discovery furnished by the Government to the Marciniak defendants under cover of a 23 June
2011 correspondence". Okay Affirmation [130], ¶81. Since Shaver is not charged in Counts 3 and 4 of
the Second Superseding Indictment relating to the assault and death of Mr. Marciniak, I deny this
request, without prejudice to re-filing with a specific showing of her entitlement to this discovery.

Fed. R. Evid. 801(d)(2)(E) "does not contain a required pretrial notice and therefore, there is no requirement on the part of the government to disclose statements made by a defendant's co-conspirator during and in furtherance of the conspiracy". Id. Since the Jencks Act governs, I deny defendants' request for disclosure of coconspirators' statements pursuant to Rule 16 and Fed. R. Evid. 801(d)(2)(E).

Shaver also seeks pretrial disclosure of "[s]tatements of the . . . defendant the Government intends to offer in evidence at trial, allegedly made to a third party, who then made a statement to the Government in which the defendant's statement is attributed and included in the third party's statement". Okay Affirmation [130], ¶72(B). However "a defendant's statements to third-parties who are not known government agents, that are later memorialized by the Government, are not subject to discovery" under Rule 16. United States v. Piedrahita, 1992 WL 58857, *5 (S.D.N.Y. 1992). Therefore, defendant's motion is also denied.

### 15. Motion for a Separate Pretrial Hearing Regarding the Existence of a Conspiratorial Agreement Prior to the Admission of Co-Conspiratorial Hearsay Pursuant to Fed. R. Evid. 801(d)(2)(E).

Defendant Shaver moves for this relief. Okay Affirmation [130], ¶73. "A district court may admit a co-conspirator's out-of-court statements as admissions against the defendant under Federal Rule of Evidence 802(d)(2)(E). For such statements to be admitted under the exception, the government must demonstrate the existence of a conspiracy and the defendant's connection therewith by a preponderance of the evidence . . . . There are three alternative procedures by which to determine admissibility based upon a conspiracy. The Court may: (1) conduct a pre-trial "mini-hearing" outside the presence of the jury to hear the government's proof of

conspiracy; (2) require the government to produce non-hearsay evidence of conspiracy first prior to making the finding of admissibility; or (3) admit the hearsay statements subject to a later demonstration of their admissibility." United States v. Schoonover, 2008 WL 4646174, *2 (E.D.Tenn. 2008).

Although courts have employed the third option of permitting the government to use a co-defendants' hearsay statements subject to the connection without the need for a pretrial hearing on the sufficiency of the evidence concerning each defendant's participation in the alleged conspiracy (*see, e.g.*, Yarborough, 2007 WL 962926 at *17; Schoonover, 2008 WL 4646174 at *3), resolution of this issue is better left for the determination of the trial judge. *See* United States v. Adjei, 2010 WL 2640528, *4 (W.D.N.Y. 2010) (Schroeder, M.J.). Therefore, defendant's motion for a pre-trial hearing is denied, without prejudice to renewal before Judge Arcara.


16.     **Motion for Preservation of Rough Notes**

Defendants move for preservation of rough notes. *See* Kubiniec Affirmation [135], ¶25; Lembke Declaration [121-1], ¶¶83-85; Greenman Affirmation [124], ¶¶103-105; Parsons' Motion [119], Point VII; Rarick Affirmation [141], ¶¶51-54. The government responds that "it has been and will be done in this case". Government's Consolidated Response [138], p. 20. Based upon this representation, defendants' pretrial motions are denied.


17.     **Motion for Leave to Employ the Services of Forensic Computer Expert**

Defendant Shaver moves for leave to employ a computer expert pursuant to the Criminal Justice Act. Okay Affirmation [130], ¶¶87-89. She offers no explanation as to why these

services are necessary for adequate representation.  Therefore, defendant Shaver's motion is denied, without prejudice to filing an *ex parte* motion containing the proper showing.  *See* The Western District of New York's Criminal Justice Act Plan, Section XI.

### 18.      Motion to Disclose Plea Agreements

Defendant Shaver moves, pursuant to Rule 47, for disclosure of "any and all plea agreements, written and/or unwritten, between the Government and any witness, informant and/or co-defendant/co-conspirator".  Okay Affirmation [130], ¶44.  However,  Rule 47, which addresses general motion practice, does not support defendant's entitlement to this relief. Therefore, defendant's motion is denied on this basis.[20]

### 19.      Motion for *In Camera* Inspection of Internal Affairs Files and for Production of Exculpatory Data

Defendant Shaver asks the government to "produce the personnel files and Internal Affairs files of all representatives of law enforcement agencies . . . who will testify in this case and for an in-camera inspection by the court, and . . . requiring the disclosure and production to the defense of those [materials] . . . which bear on the credibility of any police or governmental agent witness".  Okay Affirmation [130], ¶57.  The government represents that "it will comply with [its

---

[20]      Nevertheless, this discovery appears to fall within the government's obligations under Brady and Giglio.  *See* Yarborough, 2007 WL 962926 at *15 ("The Government is required under *Brady* . . . , to provide the defense with any evidence favorable to the accused where the evidence is material to guilt or punishment. Further, the defense is entitled to pertinent evidence regarding a material witness's credibility or reliability, including evidence of any agreements or promises of leniency between the government and a government witness.  *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  Failure of the government to reveal evidence of an understanding in return for the witness's testimony will violate due process.").

Brady obligation] . . . as it relates to . . . agents who may testify", and states that it will undertake "a search of the personnel files of the agents and officers who will [*sic*] testifying" . Government's Consolidated Response [138], p. 26. Based upon the government's representation, this motion is denied.

**20.      Motion to Inspect Grand Jury Transcripts**

Defendants Griffin (Greenman Affirmation [124], Point X) and Vendetti (Lembke Declaration [244-1], ¶¶68-84) move for production of the grand jury transcripts. They argue that the opinion of the government's expert, Dr. Michael Baden,[21] that Mr. Marciniak's death was causally related to the home invasion stands "in stark contrast to the Monroe County Office of the Medical Examiner" that Mr. Marciniak died of nature causes. Greenman Affirmation [124], ¶111. They argue that if the grand jury was only presented with the testimony of Dr. Baden, it "would certainly have been left with a misconception as to the cause of death". Id., ¶113. Therefore, they seek production of the portions of the grand jury testimony pertaining to Mr. Marciniak's cause of death. Id. They also allege that the government failed to instruct the grand jury on the affirmative defense to felony murder, thereby impairing the integrity of the grand jury. Lembke Second Supplemental Declaration [128-1], ¶¶6-18; Lembke Declaration [244-1], ¶¶72-84.[22]

In response, the government relies on the presumption of regularity afforded to grand jury proceedings and argues that it is not required to present exculpatory information or affirmative defenses to the grand jury. Government's Consolidated Response [138], pp. 38-43.

---

[21]      He is also referred to as Dr. Boden. Defendant Vendetti's Reply [189], p. 11.

[22]      If disclosure is ordered, defendants request leave to file a motion to dismiss based on the alleged grand jury failures. Lembke Second Supplemental Declaration [128-1], ¶18.

"If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." Costello v. United States, 350 U.S. 359, 363 (1956). Therefore, "[d]isclosure of grand jury minutes is extraordinary relief that will be granted only upon a compelling showing of particularized need". Castiglia, 1987 WL 30591 at *1.

Whether or not defendants' version of facts were true, "[t]he government had no obligation to present exculpatory material to a grand jury". United States v. Regan, 103 F.3d 1072, 1081 (2d Cir.), cert. denied, 521 U.S. 1106 (1997) (citing United States v. Williams, 504 U.S. 36, 51-52 (1992)); United States v. Olin Corp., 465 F.Supp. 1120, 1128 (W.D.N.Y. 1979) (Elfvin, J.) ("A prosecutor has a duty to present to a grand jury evidence which clearly negates guilt. . . . However, the prosecutor is not obliged to sift through all the evidence to find statements or documents that might be exculpatory. . . . The prosecutor does not have a duty to present defendant's version of the facts").[23] Therefore, defendants' motions for disclosure of the grand jury transcripts are denied.

Defendant Shaver also seeks disclosure of the "the ministerial procedures" followed by the grand jury. Okay Affirmation [130], ¶64. She seeks "grand jury voting records", which are not required to be recorded. See Rule 6(e)(1) . "As to Defendant's request seeking disclosure of

---

[23]    Compare with United States v. Twersky, 1994 WL 319367,* 4 (S.D.N.Y. 1994) ("while courts are generally reluctant to grant motions to dismiss an indictment based on faulty instructions, an indictment will be dismissed where, for instance, the evidence clearly establishes a defense to the charge and the government fails to inform the grand jury of the legal requirements of the defense").

impanelment of the Grand Jury and information indicating that the . . . indictment was properly filed, . . . such documents are ministerial in nature and outside the scope of [Rule] 6(e) 'because they reveal nothing of substance about the grand jury's investigation'". <u>Yarborough</u>, 2007 WL 962926 at *14 (*quoting* <u>In re Grand Jury Investigation</u>, 903 F.2d 180, 184 (3d Cir.1990)). Therefore, this motion is also denied.

21. **Motion for Inspection of Grand Jury Evidence**

Defendant Shaver seeks to inspect "all of the documents and tangible evidence subpoenaed and/or presented to the grand jury", but provides no reason or basis for this request. Okay Affirmation [130], ¶66. Therefore, this motion is denied.

22. **Motion to Order the Government to Transcribe all Grand Jury Testimony**

Defendant Shaver moves "for an order requiring the Government to cause all grand jury testimony in this case to be transcribed pursuant to the authority of <u>*Brady*</u>". Okay Affirmation [130], ¶65. Since I have concluded that defendants are not entitled to inspect the grand jury transcripts, I deny this motion as moot.

23. **Motion for Disclosure of Fed. R. Evid. 807 Residual Hearsay Exception Statements**

Defendant Meade moves for pretrial notice of any evidence the government intends to admit under Fed. R. Evid. 807. Kubiniec Affirmation [135], ¶¶26-28. The government responds that it "has no such evidence at this time, but agrees, should it come into possession of any evidence that is [*sic*] will offer pursuant to this rule, it will promptly comply with the rule's notice provision".

Government's Consolidated Response [138], p. 49.  Based on the government's representations, this motion is denied.

        **24.**        **Motion for Leave to File Additional Motions**

        Defendants move for leave to file additional motions.  *See* Kubiniec Affirmation [135], ¶¶38-39; Greenman Affirmation [124], ¶¶139-142; Parsons' Motion [119], Point XVII; Okay Affirmation [130], ¶74; Rarick Affirmation [141], ¶¶56-58; Schechter Affirmation [243], ¶68; Lembke Declaration [244-1], ¶138.  These motions are denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted.  *See* Rule 12(e).

## CONCLUSION

        For these reasons, I recommend that: 1) defendants' motions to dismiss be granted to the extent that they 1) seek dismissal of the First Racketeering Act of Count 1, Count 1 as against defendant Stewart for violating 18 U.S.C. §1962(c), and Count 6, but otherwise be denied; and that 2) defendants' motions to suppress be denied.  I further order that  defendants' remaining non-dispositive pretrial motions are granted to the extent that they seek joinder and expert witness disclosures pursuant to Rule 16(a)(1)(G), but are otherwise denied.

        Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by February 8, 2013 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any

right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: January 22, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge